

**SO ORDERED.**

**SIGNED this 19 day of June, 2006.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

```
              UNITED STATES BANKRUPTCY COURT
              EASTERN DISTRICT OF NORTH CAROLINA
                      RALEIGH DIVISION
```

| | |
|---|---|
| IN RE: | CASE NO. |
| JEFFREY ALAN LETT | 05-02699-5-ATS |
|     DEBTOR | |
| | |
| BRENDA LOUISE LETT | ADVERSARY PROCEEDING NO. |
|     Plaintiff | S-05-00139-5-AP |
|     v. | |
| JEFFREY ALAN LETT | |
|     Defendant. | |

MEMORANDUM OPINION

The trial of this adversary proceeding to determine, pursuant to 11 U.S.C. § 523(a)(15), the dischargeability of the debts owed by the chapter 7 debtor, Jeffrey Alan Lett, to the plaintiff, Brenda Louise Lett, was held on May 23, 2006, in Raleigh, North Carolina.

Jeffrey Alan Lett filed a petition for relief under chapter 7 of the Bankruptcy Code on June 28, 2005. Brenda Lett is the debtor's

former spouse. An equitable distribution judgment was entered by the North Carolina District Court for Lee County on January 5, 2006, that provided for a distributive award in the amount of $30,000 to be paid by Mr. Lett to Brenda Lett. The order further provides that Mr. Lett is to pay this judgment either in a lump sum or in monthly installments of $500 per month for 60 months, beginning on February 1, 2006. Brenda Lett seeks a determination, pursuant to § 523(a)(15), that the $30,000 distributive award is nondischargeable.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

A debt incurred by the debtor in the course of a divorce or separation, other than for maintenance or support, is nondischargeable unless

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

2

11 U.S.C. § 523(a)(15).[1]  The court must first determine whether the debtor has the ability to pay the debt, and may only proceed to the balancing test if the court finds that the debtor can pay the debt. The burden of proof is on the debtor to show that he cannot pay the debt.

Mr. Lett first presented evidence to support his contention that he does not have the ability to pay the debt to Brenda Lett.  Mr. Lett is retired from the military and is employed with Northrop Grumman as a military trainer.  Mr. Lett and his new wife, Dee Lett, have a combined monthly net income of $5,296.47.  This amount includes Dee Lett's child support payments received from her children's father, as well as her disability payments.  The net income figure also takes into account deductions for insurance as well as Brenda Lett's monthly distribution of Mr. Lett's military retirement in the amount of $648.25 and $419 in child support deducted from the military retirement income.

Mr. Lett also provided a breakdown of monthly expenses.  He contends that the average monthly expenses for his household is $6,935.38, and that there are additional items--including dental work

---

[1] Section 523(a)(15) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and now provides that debts incurred in the course of a divorce or separation, other than for maintenance or support, are nondischargeable.  Because this case was filed before October 17, 2005, the effective date of BAPCPA, the debtor has the opportunity to demonstrate an inability to pay or a balance of the equities in his favor.  Under the new law, these factors are immaterial.

3

for Mr. Lett, home repair items, and a new car to replace Mr. Lett's 1995 Silverado truck with 227,000 miles on it--that the Letts would like to include in their budget that would add approximately $890 to their monthly costs. Even without these items, however, Mr. Lett contends that he is overextended by $1,638.91 each month.

Three children from Dee Lett's prior marriage reside with Mr. Lett and Dee Lett. Mr. Lett also has one daughter with Brenda Lett who spends two weekends per month with Mr. Lett and Dee Lett. Mr. Lett's expenses include activities and clothing for all four children, food for a family of five with an additional allowance for food when Mr. Lett's daughter visits, personal grooming and entertainment for a family of five, charges for pets, and a small student loan, as well as the mortgage payment on Dee Lett's separately-owned house and utilities, phone and cable. The Letts are also responsible for funeral costs for the recent loss of Dee Lett's oldest daughter, as well as substantial legal fees incurred in the ongoing domestic dispute between Mr. Lett and Brenda Lett involving the property settlement and visitation issues.

Brenda Lett contends that Mr. Lett is underemployed. His resumé indicates that he is fluent in Spanish, he has a strong pharmaceutical background, a detailed knowledge of anatomy, and that he has an MBA. Mr. Lett testified that when he wrote his resumé, he was working toward an MBA but he was unable to complete the program and does not

anticipate being able to return to school.  He also testified that he has had few job offers since he retired from the military, and that his jobs have been limited to Lowe's Home Improvement, the Sears Auto Center, and his current job with Northrop Grumman.  He believes his ability to advance in his current employment will be limited because he was not an officer in the military and does not have a formal military education.

If the court were to look only at Mr. Lett's current income and expenses without question, it would be clear that he does not have the ability to pay the debt.  However, Mr. Lett makes a good living and there is probably some flexibility in the choices he and his family make with respect to expenses.  The court is not in the business of telling debtors how to spend their money, but it is incumbent upon the court to ensure that debts that Congress chose to except from discharge (absent a strong showing by the debtor) are given higher priority than some of the discretionary spending that appears in the Letts' budget.

In considering Mr. Lett's ability to pay, the court may consider both the debtor's past payment history and future income stream. <u>Graves v. Myrvang (In re Myrvang)</u>, 232 F.3d 1116, 1120 (9th Cir. 2000).  Mr. Lett's resumé is impressive, and it is likely that he will be able to advance in his career.  With some adjustments to his monthly expenses, the court finds that Mr. Lett has the ability to repay the debt.

Having determined that Mr. Lett can repay the debt to Brenda Lett, the court now turns to the balancing test under § 523(a)(15)(B). The balancing test is an equitable one in which the totality of the circumstances are taken into account. Rushlow v. Rushlow (In re Rushlow), 277 B.R. 216, 224 (Bankr. D. Vt. 2002).

Dee Lett testified that if the debt is not discharged, neither she nor Mr. Lett will have any credit and they will be unable to qualify for a loan (Dee Lett is also a debtor in a separate case). In addition, they have no assets to sell. Dee Lett does not believe they will be able to pay for her son's braces or meet other expenses. Mr. Lett contends that his testimony regarding his inability to pay the debt also supports a finding that the balancing test should be resolved in his favor.

Brenda Lett is a nurse working two jobs: she works full time with Sanford Cardiology and every other weekend with Central Carolina Hospital. Though she once earned $80,000 per year at Central Carolina Hospital, she was injured in a car accident and is now unable to perform those same nursing duties. Her current gross pay from Sanford Cardiology is approximately $4,228 per month, and she earns at most $1,185 gross per month from Central Carolina Hospital. Her net income is approximately $3,932. Brenda Lett testified that she is unlikely to advance to a higher-paying position, in that she has the highest paying

6

job she can achieve at her education level, given her physical limitations.

Brenda Lett also testified that her monthly living expenses approximate $3,426, but this amount does not include payments on the joint debts she is solely responsible for as a result of the equitable distribution judgment and Mr. Lett's bankruptcy. Brenda Lett has been negotiating with the joint creditors, but she is concerned about meeting her monthly responsibilities. Brenda Lett lives in a double-wide mobile home in rural Lee County with her daughter. She admitted that if she were to file bankruptcy, discharging all but the joint tax debt, she might be able to meet her budget; however, she does not wish to discharge those obligations at this time, preferring instead to pay her creditors.[2]

It is the debtor's burden to show that "a discharge to him would confer upon him a benefit that outweighs the detrimental consequences" to Brenda Lett. Hart v. Molino (In re Molino), 225 B.R. 904, 909 (6th Cir. BAP 1998). Mr. Lett has not met this burden.

The state court order concluded that a division of the marital estate in the amount of .457 to Mr. Lett and .543 to Brenda Lett was fair and equitable, taking into consideration the discharge of many of

---

[2] Brenda Lett's attorney suggested that her ability to discharge some of the debt in bankruptcy is irrelevant to the court's analysis. The court agrees in this case; however, it may be relevant in cases in which both parties are in more dire financial straits.

7

the debts as to Mr. Lett.  Implicit in the state court's judgment is a finding that the equities of the case were balanced when the state court awarded Brenda Lett $30,000.  The equitable distribution order was entered as recently as January 2006, and Mr. Lett has not shown a decline in circumstances since the entry of the order.  In fact, his income situation has improved, as he was working for Sears for approximately $35,000 per year at the time.

Because Mr. Lett failed to meet his burden of proving an inability to pay the distributive award and that the benefit of the discharge to him would outweigh the detriment to Brenda Lett, the debt arising out of the equitable distribution judgment entered by the state court on January 5, 2006, is **NONDISCHARGEABLE**.  Brenda Lett indicated that she would be willing to modify the repayment terms set forth in the state court's order, and this court encourages the parties to do so.

A separate judgment will be entered.

**END OF DOCUMENT**